IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| HARVEY HYDE, | ) | |
| | ) | |
| Petitioner, | ) | 4:06CV3107 |
| | ) | |
| v. | ) | |
| | ) | |
| ELLEN BROKOFSKY, NEBRASKA | ) | MEMORANDUM OPINION |
| PROBATION DEPARTMENT and JON | ) | |
| BRUNING, ATTORNEY GENERAL OF | ) | |
| THE STATE OF NEBRASKA | ) | |
| | ) | |
| Respondents. | ) | |

This matter is before the Court for review of the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Filing No. 1) filed by the petitioner, Harvey Hyde ("Hyde"). This Court previously dismissed Hyde's petition for failure to exhaust available state court remedies (Filing No. 6). Hyde filed his petition for reconsideration on June 22, 2006 (Filing No. 7), which the Court granted (Filing No. 8), reinstating his initial petition (Filing No. 1) and ordering respondents to file a response.

Hyde raises two grounds for his petition: first, that his conviction was obtained in violation of his right to due process where syringes found in his vehicle were tested and found to contain methamphetamine but, when Hyde sought to have the syringes independently tested, he found they had been destroyed with only the contents of the solution used to rinse the syringes

retained.  Hyde sought to have the test results excluded at trial but the trial court denied his motion.  The second ground upon which Hyde seeks relief asserts that evidence used against him at trial was obtained pursuant to an unconstitutional search and seizure of his vehicle after his arrest.

Respondents filed their answer (Filing No. 11) on August 14, 2006, along with a collection of relevant state court records (Filing No. 12).  On September 19, 2006, the Court ordered Hyde to submit his brief in support of his habeas petition and respondents to submit their brief in opposition (Filing No. 13).  Hyde submitted his supportive brief on November 3, 2006 (Filing No. 14), and respondents filed their brief in opposition on January 8, 2007 (Filing No. 18).

## I.  Standard of Review

Title 28, U.S.C. § 2254 affords habeas corpus relief to "a person in custody pursuant to the judgment of a State court [who] is in custody in violation of the Constitution or laws . . . of the United States."

To preserve issues for federal habeas review, a state prisoner must fairly present his claims to state courts during direct appeal or in post-conviction proceedings.  *Sweet v. Delo*, 125 F.3d 1144, 1149 (8th Cir. 1997).  Failure to raise a claim in a post-conviction appeal abandons the claim.  *Id.* at 1150 (*citing Reese v. Delo*, 94 F.3d 1177, 1181 (8th Cir. 1996)).  A state

prisoner who fails "'to follow applicable state procedural rules [for] raising the claims' (citation omitted) . . . is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." *Id*. at 1151 (*citing Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim." *Abdullah v. Groose*, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). "[F]airly present" means that state prisoners are "required to 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" *Id*. at 411-12. A state-law claim which is raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." *Id*. at 412.

If a claim has not been fairly presented, "the federal court must determine if the exhaustion requirement has nonetheless been met because there are no 'currently available, non-futile remedies,' through which the petitioner can present his claim." *Smittie v. Lockhart*, 843 F.2d 295, 296 (8th Cir. 1988)(citation omitted).

## II. Background

On September 19, 2003, in Lincoln, Nebraska, Hyde was stopped after his vehicle had changed lanes three times without signaling (Filing No. 12, Attachment 5a, Bill of Exceptions ("BOE"), 16:3-5). Hyde was asked to step out of his vehicle (BOE at 18:5-6). When Hyde stepped out, an open bottle of beer fell out of the vehicle and landed on the ground. *Id*. at 18:7-18. After questioning, Hyde was placed under arrest. *Id*. at 19:9-13. Hyde was searched by Officer Benjamin Faz ("Officer Faz"), and a writing tablet was found in his pocket which contained a list of ingredients commonly used in the manufacture of methamphetamine. *Id*. at 20:1-5. Only then was Hyde's vehicle searched. *Id*. at 20:9-10.

The container holding the syringes and rubber strip was located in plain view on the pickup truck's bench seat. *Id*. at 20:22-21:8. Officer Faz immediately recognized the container as a rig -- the things used to inject methamphetamine -- based on his experience as he has come upon similar containers many times in searches of vehicles. *Id*. at 20:9-21:18. Officer Faz opined that this type of container is used as a rig because: "It's a perfect size to keep needles in." *Id*. at 21:11-15. The rig was closed and when Officer Faz opened it, he saw that it contained two syringes with needles and a large rubber band. *Id*. at 22:19-23:1.

Officer Faz seized the rig and its contents. *Id*. at 23:18-23. He took the syringes and filled them with distilled water, then ran the distilled water through the syringes and captured the distilled water in vials which were then sent to the State Lab for testing. *Id*. at 24:4-14. The tests were positive for the presence of methamphetamine.

On December 19, 2003, Hyde was charged by information in the District Court of Lancaster County, Nebraska, with unlawful possession of a controlled substance, methamphetamine, in violation of Neb. Rev. Stat. § 28-416(3), a class IV felony. On January 21, 2003, Hyde filed a motion to suppress evidence, arguing there was no probable cause to search the vehicle. The District Court held a hearing on the motion on March 24, 2004. The District Court denied the motion, finding that officers had probable cause to stop the vehicle for the illegal lane changes, probable cause to arrest Hyde for possession of the open container and probable cause to search Hyde's vehicle subsequent to his arrest.

On May 11, 2004, Hyde filed a motion for additional evidence testing, seeking an order requiring the State to make available to Hyde the alleged drug samples taken by law enforcement officers which were the subject of chemical analysis by the State. Hyde wanted to have his own experts test the drug samples. After a hearing, the District Court ordered the State

-5-

to turn over any available evidence allegedly taken from Hyde on September 9, 2003, and subsequently tested for the presence of methamphetamine. The solution that had been tested was made available to the lab designated by Hyde, but the lab refused to perform the tests requested because they did not do that type of testing.

On September 24, 2004, Hyde filed a motion in limine to exclude any evidence surrounding the testing of the syringes allegedly seized from Hyde on September 9, 2003. The motion sought to exclude any evidence as to what the alleged substance in the syringe was, and to bar any reference to methamphetamine at the trial. Hyde's argument was based on Neb. Rev. Stat. § 29-1913. After a hearing, the District Court denied Hyde's motion in limine.

A bench trial was conducted on September 29, 2004. Hyde objected to the introduction of three exhibits -- a state lab report, a plastic case and a vial -- on the grounds that the evidence should be excluded under Neb. Rev. Stat. § 29-1913. All three objections were overruled. After evidence was presented, the District Court found Hyde guilty of unlawful possession of a controlled substance -- methamphetamine. Hyde was sentenced on November 30, 2004, to a term of probation of eighteen (18) months.

Hyde filed an appeal with the Nebraska Court of Appeals, which rejected Hyde's claim. Hyde then filed a petition for further review to the Nebraska Supreme Court, which denied the petition. Hyde then filed this action.

### III. Discussion

#### A. Destroyed Syringes

Hyde did not raise his due process claim in the state court proceedings. Rather than address whether the failure to exhaust available state court avenues of relief should be excused, the Court will consider the claim on its merits.

A criminal defendant must evidence bad faith on the part of police in failing to preserve potentially useful evidence to constitute a claim for denial of due process. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). Bad faith turns "on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Youngblood*, 488 U.S. at 56, n. The exculpatory value of the evidence must be apparent to the police at the time the evidence is destroyed. *Id*. at 56, n. (*citing California v. Trombetta*, 467 U.S. 479, 489 (1984)).

In *Trombetta*, the Court found no bad faith on the part of officers where the officers failed to preserve breath samples because the officers were "acting in accord with their normal practice." *Trombetta*, 467 U.S. at 488. Here, as in *Trombetta*, the record demonstrates that Officer Faz did not act

-7-

in bad faith when he destroyed the syringes after first running distilled water through the syringes to test for the presence of methamphetamine, because he understood that he was acting in accord with departmental procedures in destroying the syringes (Bill of Exceptions, 81:20-82:23). When asked why he disposed of the syringes, Officer Faz said, "[b]ecause that's what is always done with syringes. . . . Property doesn't like to take them and the State Lab doesn't test them." *Id*. at 82:19-23. Further, in accord with the prevailing practice, Officer Faz disposed of the syringes even before the test results on the contents was completed. Thus, Officer Faz would have had no way to know if the syringes could have been inculpatory or exculpatory at the time he disposed of them in accord with the standard practice of the department. Therefore, there is no evidence of bad faith on the part of Officer Faz in failing to preserve the syringes. Without evidence of bad faith, Hyde is unable to state a claim for denial of due process.

    **B.**   **Search and Siezure**

The second ground upon which Hyde seeks relief asserts that evidence used against him at trial was obtained pursuant to an unconstitutional search and seizure of his vehicle subsequent to his arrest.

"A federal court making the 'unreasonable application' inquiry should ask whether the state court's application of

-8-

clearly established federal law was objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). *Williams* emphasizes that a state court's determination that is simply erroneous does not meet the AEDPA standard for unreasonableness. *Williams*, 529 U.S. at 410. The source of "clearly established federal law" is limited to the jurisprudence of the Supreme Court. *Siers v. Weber*, 259 F.3d 969, 973 (8th Cir. 2001)(*citing Williams*, 529 U.S. at 412).

Here, the search of Hyde's vehicle was a search incident to arrest (Bill of Exceptions, 42:3-11). At the hearing on Hyde's motion to suppress, Officer Faz testified that Hyde was stopped after his vehicle had changed lanes three times without signaling. *Id*. at 16:3-5. Hyde was asked to step out of his vehicle. *Id*. at 18:5-6. When Hyde stepped out, an open bottle of beer fell out of the vehicle and landed on the ground. *Id*. at 18:7-18. After questioning, Hyde was placed under arrest. *Id*. at 19:9-13. Hyde was searched, and a writing tablet was found in his pocket which contained a list of ingredients commonly used in the manufacture of methamphetamine. *Id*. at 20:1-5. Only then was Hyde's vehicle searched. *Id*. at 20:9-10.

The container holding the syringes and rubber strip was located in plain view on the pickup truck's bench seat. *Id*. at 20:22-21:8. Officer Faz immediately recognized the container as a rig -- the things used to inject methamphetamine -- based on

his experience as he has come upon similar containers many times in searches of vehicles. *Id*. at 20:9-21:18. Officer Faz opined that this type of container is used as a rig because: "It's a perfect size to keep needles in." *Id*. at 21:11-15. The rig was closed and when Officer Faz opened it, he saw that it contained two syringes with needles and a large rubber band. *Id*. at 22:19-23:1.

Officer Faz seized the rig and its contents. *Id*. at 23:18-23. He took the syringes and filled them with distilled water, then ran the distilled water through the syringes and captured the distilled water in vials which were then sent to the State Lab. *Id*. at 24:4-14.

The United States Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 482 (1976). Under *Stone*, a Fourth Amendment claim is barred unless either the state provided no procedure by which a person could raise his Fourth Amendment claim, or that the prisoner was foreclosed from using the procedure provided by an unconscionable breakdown in the system. *Willett v. Lockhart*, 37 F.3d 1265, 1273 (8th Cir. 1994)(en banc).

-10-

Here, Hyde was able to raise his Fourth Amendment claim. First, Hyde raised this claim by filing a motion to suppress. A pre-trial hearing was held on the motion, after which the trial court entered an order denying the motion to suppress. After trial, Hyde raised this claim again in his direct appeal to the Nebraska Court of Appeals. The Nebraska Court of Appeals rejected Hyde's claim. Hyde then filed a petition for further review to the Nebraska Supreme Court which denied the petition. The state provided Hyde with a procedure by which to raise his Fourth Amendment claim, a procedure that Hyde utilized. Therefore, under *Stone*, Hyde's claim for habeas relief is barred.

**C. Ineffective Assistance of Counsel**

Hyde's claims of ineffective assistance of counsel fail because the Court has addressed each claim on its merits and found the underlying due process and unconstitutional search and seizure claims to be without merit. Claims that counsel was ineffective in failing to raise these issues in the state court proceedings fails to state a claim for habeas relief.

Having addressed each of Hyde's claims on the merits, the Court finds that his petition for a write of habeas corpus

-11-

should be dismissed.  A separate order will be entered in accordance with the memorandum opinion.

DATED this 30th day of January, 2007.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court